UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

C. JACKSON BROWN and LAREE LYNN BROWN,

        Plaintiffs,

v.

SCRIPPS INVESTMENTS & LOANS, INC., *et al.*,

        Defendants.

CASE NO. C08-1166 RSM

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

## **I. INTRODUCTION**

This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. #7). Defendants argue that Plaintiffs' complaint should be dismissed for improper venue under FRCP 12(b)(3). Defendants contend that a forum selection clause entered into by the parties mandates that all disputes be brought in San Diego, California. Plaintiffs respond that the clause is unenforceable because it is contained in an ancillary document to the original agreement between the parties.

For the reasons set forth below, the Court agrees with Plaintiffs, and DENIES Defendants' motion.

## **II. DISCUSSION**

### **A. Background**

This case arises out of an allegedly fraudulent investment sale between Plaintiffs C. Jackson Brown and Laree Lynn Brown, and Defendant Scripps Investments & Loans, Inc.

ORDER
PAGE - 1

("Scripps"). Plaintiffs are a married couple residing in Woodinville, Washington, while Scripps is a California corporation in the business of selling and issuing securities. In the spring of 2005, and following what Plaintiffs describe as an aggressive campaign by representatives of Scripps to induce Plaintiffs to invest, Plaintiffs advanced approximately $400,400 to Scripps. Plaintiffs indicate that this amount comprised all of their retirement savings and substantially all of their assets.

Scripps used these funds as a part of a $17.5 million commercial loan made by Scripps to Defendant The Vineyard South, LLC ("Vineyard"), a Scripps' subsidiary. The loan was issued in connection with a real estate development project in California. In exchange for their investment, Scripps represented to Plaintiffs that they would receive regular, periodic payments of interest and principal.

Significantly, and prior to the investment, Plaintiffs completed an Investment Questionnaire sent by Scripps. Plaintiffs disclosed financial information in this document, including that: (1) in 2002 and 2003, their personal incomes were not over $200,000, and their joint income was not above $300,000; (2) their estimated income for 2004 did not exceed $200,000; (3) they did not have a net worth over $1,000,000; and (4) they were investing more than 20% of their net worth. Plaintiffs also filled out a second Investment Questionnaire two weeks after making their investment. Plaintiffs advised Scripps that no changes had occurred since they filled out their first questionnaire.

Approximately one month after making their initial investment, Plaintiffs received their first interest payment from Scripps in the amount of $4,976.67. Plaintiffs indicate that after this payment, they heard very little from Scripps over the next year. Moreover, on April 7, 2006, Scripps notified Plaintiffs that the developer was over budget and needed an additional $7 million to complete the project. The letter also requested Plaintiffs to authorize Scripps to subordinate Plaintiffs' interest to a new first position lender in order to ultimately add more capital. Plaintiffs authorized this subordination.

On July 3, 2006, Plaintiffs received a second payment from Scripps in the amount of $43,870. Scripps further indicated to Plaintiffs that later that fall, Plaintiffs were entitled to

receive a final payoff of their investment and accrued interest. However, no such payment was made. Instead, Scripps sent a status report to Plaintiffs on November 16, 2006, informing them that the developer was in default and could not pay off the loan. As a result, Scripps requested authorization from Plaintiffs to loan additional funds in order to protect the original investment. Believing they had no choice, Plaintiffs executed this authorization as well.

As part of this approval, Plaintiffs signed an operating agreement verifying the creation of a related Scripps entity, Scripps Vineyard South, LLC ("Scripps Vineyards South"). Among other things, the operating agreement transferred Plaintiffs' interest in the loans originally made from Vineyard to Scripps Vineyards South. The agreement also contains a clause entitled "Governing Law and Venue," which states in relevant part:

> This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles) . . . [and] all actions and proceedings arising in connection with this Agreement must be tried and litigated exclusively in the state and federal courts located in the county of San Diego, State of California, which courts have personal jurisdiction and venue over each of the parties to this Agreement for the purpose of adjudicating all matters arising out of or related to this Agreement.

(Dkt. #8, Decl. of Heack, Ex. A., § 14.7).

Meanwhile, Plaintiffs contend that Scripps periodically mailed newsletters and other written communications to Plaintiffs. In these communications, Scripps again requested additional funds from the original investor pool due to a series of setbacks, defaults, construction and sales management issues and other problems with real estate development. Plaintiffs were also advised by Scripps in December of 2007 that another Scripps' affiliated entity, Scripps Vineyards Villas, LLC ("Scripps Vineyards Villas") had become the "owner" of the project. Furthermore, Scripps Vineyards Villas was exploring the possibility of bankruptcy to protect against foreclosure and sought approval from Plaintiffs to enter into Chapter 11 bankruptcy. Once again believing they had no choice or control over this matter, Plaintiffs complied with the request.

Eventually, in January of 2008, Scripps Vineyards Villas filed for chapter 11 bankruptcy in the Central District of California. As a result, Plaintiffs brought this lawsuit in

ORDER
PAGE - 3

this Court against Scripps and its affiliated entities, as well as several individuals associated with Scripps (hereinafter "Defendants"). Plaintiffs claim that all the communications made by Defendants contained material misrepresentations and omissions that they relied upon to their detriment. Plaintiffs also seek rescission of the underlying agreement, and a return of the balance of the principal sums they invested with Defendants. This amount totals $351,553.

Plaintiffs further allege that Defendants violated the Federal Securities Act, the Washington State Securities Act (the "WSSA"), and the Washington Consumer Protection Act ("CPA"). They also bring claims for breach of personal guaranty and negligence. Defendants now bring the instant motion to dismiss pursuant to FRCP 12(b)(3) based on the forum selection clause mentioned above.

**B. Standard of Review**

A motion brought pursuant to FRCP 12(b)(3) addresses the appropriate venue in which a case should be brought. Unlike a FRCP 12(b)(6) motion to dismiss for failure to state a claim, pleadings need not be accepted as true and the court may consider facts outside the pleadings under FRCP 12(b)(3). *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Nevertheless, "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party[.]" *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). This principle is based upon the effect of enforcing a forum selection clause, which forecloses suit in the jurisdiction of plaintiff's choice. *See id*. at 1139 (citing *New Mood Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)).

**C. Forum Selection Clause**

Notwithstanding the parties' respective arguments discussing proper venue and choice-of-law rules, or the availability of traditional defenses such as fraud and duress to interpret the forum selection clause in this case, the Court finds that resolution of the instant case starts and ends with the test set forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.* 407 U.S. 1 (1972). *Bremen* clearly held that forum selection clauses are prima facie valid and

ORDER
PAGE - 4

should not be set aside unless the party challenging the enforcement of such a provision can show it is unreasonable under the circumstances. *Id*. at 12. A forum selection clause is unreasonable if (1) the inclusion of the clause in the agreement was the product of fraud or overreaching, (2) the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced, or (3) enforcement would contravene a strong public policy of the forum in which suit is brought. *See Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing *Bremen*, 407 U.S. at 12-13, 15, 18). Any one of these grounds is sufficient to invalidate a forum selection clause. *Argueta*, 87 F.3d at 325. Although *Bremen* discussed forum selection clauses in the context of an admiralty case, "its standard has been widely applied to forum selection clauses in general." *Argueta*, 87 F.3d at 325 (collecting cases). The party challenging the forum selection clause bears the burden of showing that enforcement would be unreasonable and unjust. *Bremen*, 407 U.S. at 15.

In the instant case, the forum selection clause is unenforceable because it satisfies all the factors for unreasonableness set forth in *Bremen*. First, Plaintiffs sufficiently allege that the inclusion of this forum selection clause is a product of overreaching by Defendants. Although the Court recognizes that "a differential in power or education of a non-negotiated contract will not vitiate a forum selection clause" on its own, *see Murphy*, 362 F.3d at 1141, this finding is generally premised on the notion that unenforceability "would disrupt the settled expectations of the parties[.]" *Id*. That is certainly the case here, as enforcement would run contrary to Plaintiffs' reasonable expectations. The forum selection clause is contained in an operating agreement establishing Plaintiffs' membership interests in a newly created LLC. This LLC was created by Defendants in an attempt to save the initial investment, and Plaintiffs had no true choice in signing the agreement. The operating agreement is therefore an ancillary document that is unrelated to the underlying sale which Plaintiffs seek rescission of. It is obvious to conclude that Plaintiff never expected to litigate a claim in a foreign jurisdiction. It would be inequitable for the Court to find that the provision expresses the true intent of the parties.

Nevertheless, Defendants argue that the clause encompasses all Plaintiffs' causes of action, and that Plaintiffs should reasonably expect to adhere to litigation in California because the agreement in which the clause is contained covers any and all disputes arising out of the agreement. Defendants specifically suggest that "[b]ut for the Agreement, there could be no investment, as the Agreement governs the investment in its entirety." (Dkt. #7 at 8); *see also* Defs.' Reply (Dkt. #14 at 3) ("Were it not for the investment, there would be no LLC agreement."). This logic is fundamentally flawed. In fact, the exact opposite is true. But for Plaintiffs' original investment, no commercial loan could have occurred, and ultimately no operating agreement forming Scripps Vineyard South would have been made. The operating agreement was simply not a vital aspect of Scripps' original agreement with Plaintiffs.

Furthermore, no court has suggested that the analysis requires a trial court to completely ignore the bargaining inequality of the parties. The Ninth Circuit has clearly held that the *Bremen* analysis fundamentally requires a court to take into account "the factual circumstances . . . and the underlying dispute which has brought the parties to court, *including any power differentials which may exist between the two parties to a contract*." *Spradlin v. Lear Siegler Mgmt. Servs. Co., Inc.*, 926 F.2d 865, 867-68 (9th Cir. 1991) (emphasis added).

Here, there exists a significant disparity between Plaintiffs and Defendants. As described above, Plaintiffs were unsophisticated investors who placed all their retirement funds into this investment scheme. On the other hand, Defendants acknowledge that Scripps is a California corporation in the business of selling and issuing securities who came into this forum to solicit Plaintiffs' investment. Any doubt as to Defendants superior bargaining power is further erased by Defendants' creation of several affiliated entities and subsidiaries in order to save the investment. Consequently, it is clear that the forum selection clause was a result of overweening bargaining power.

The second reason in support of a finding of unenforceability is that it would be prohibitively expensive for Plaintiffs to litigate in San Diego, California. Courts are required to consider a party's financial ability to litigate in the forum selected by the contract when

ORDER
PAGE - 6

determining the reasonableness of enforcing a forum selection clause. *See Murphy*, 362 F.3d at 1141-42 (citing *Spradlin*, 926 F.2d at 869). Here, and as mentioned previously, Plaintiffs claim that they invested all of their retirement savings into this allegedly fraudulent scheme, and that the savings also represented substantially all of their assets. As a result, Plaintiffs contend that "[w]e have no other retirement funds or savings to rely upon to prosecute this action." (Dkt. #12, Decl. of Brown, ¶ 48). Plaintiffs further indicate that "[i]f the matter is transferred to California, we cannot afford to hire California counsel to assist or replace our existing [local counsel]. We certainly cannot afford to travel to or from California for hearings or trial, or to compensate [local counsel] to travel." (*Id*. at ¶ 49).

The Court has no reason to doubt these representations. It would certainly be unjust for Plaintiffs to litigate a claim nearly 1,600 miles away given their financial circumstances. Coupled with the Court's duty to construe all reasonable inferences in favor of the non-moving party, this ground weighs in favor of denying Defendants' motion.

Lastly, the Court finds that enforcement of this forum selection clause would violate a strong public policy of this forum. The Court initially notes that a party challenging enforcement of a forum selection clause may not base its objection on a choice of law analysis. *See Swenson v. T-Mobile USA, Inc.*, 415 F.Supp.2d 1101, 1104 (S.D. Cal. 2006). Thus, Plaintiffs' argument that application of Delaware law operates to bar enforceability of the instant forum selection clause is misplaced. *See also Besag v. Cusom Decorators, Inc.*, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009) (citing *Fireman's Funds Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1997)) (holding that "the Ninth Circuit has held that the loss of a claim is insufficient to invalidate a forum selection clause based on public policy grounds").

Plaintiffs nonetheless have satisfied their burden in proving that this clause is unenforceable on public policy grounds. Plaintiffs have made this showing because requiring Plaintiffs to bring suit in California pursuant to an ancillary document to an allegedly fraudulent transaction would directly violate Washington's public policy. This policy unequivocally protects Washington's citizens by providing an adequate remedy for violations

of the WSSA and the Washington CPA, two acts that form the basis of Plaintiffs' claims. Plaintiffs would have no equivalent remedy in California because of their inability to maintain a lawsuit in that forum.

Overall, denying Defendants' motion to dismiss comports with notions of equity and justice, as this case neither involves two complex parties nor substantial negotiations. Instead, it involves financial representations made by Defendants to unsophisticated individuals. It is unreasonable to require Plaintiffs to litigate a claim in a separate forum pursuant to a clause that was unilaterally imposed on them, especially when the clause is contained in an operating agreement forming a separate corporation. Indeed, Plaintiffs do not attack the validity of the separate corporation or question the interpretation of the operating agreement forming the corporation. Plaintiffs seek rescission of the underlying sale, and no forum selection clause exists in the original agreement. Thus, the Court finds no justifiable reason to dismiss this case.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion to Dismiss (Dkt. #10) is DENIED. Defendants are directed to respond to Plaintiffs' amended complaint no later than thirty (30) days from the date of this Order. Once Defendants respond, the Court will issue its initial scheduling order.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 11th day of June, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 8